UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

NICHOLAS FRANZE & GEORGE
SCHRUFER, JR. on behalf of themselves,
And of all similarly situated individuals,

                Plaintiffs,

  -against-

BIMBO FOODS BAKERIES DISTRIBUTION,
INC., F/K/A GEORGE WESTON BAKERIES
DISTRIBUTION, INC.,

                Defendants.
---------------------------------------------------------x

Civil Action

**JURY TRIAL DEMANDED**

## COLLECTIVE ACTION AMENDED COMPLAINT

### Introduction

1.      This is an action brought on behalf of Plaintiffs and individuals who are similarly

situated as a collective action and on behalf of the members of the proposed New York Rule 23

Class, who currently and formerly operate(d) as bakery distributors and worked for Defendant

BIMBO FOODS BAKERIES DISTRIBUTION, INC., F/K/A GEORGE WESTON BAKERIES

DISTRIBUTION, INC. ("Bimbo" or "Defendant"), and challenge its unlawful misclassification

of them as independent contractors instead of employees ("Distributors"). Plaintiffs allege

violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* and New York

Labor Law § 193 *et. seq.* and seek remedies for themselves and other individuals who opt-in to

this matter for statutory and common law violations that denied them the rights, obligations,

privileges and benefits owed to them as employees resulting from their misclassification.

2.      This class consists of all individual who operate(d) as Distributors for Bimbo in New York ("Class", "Class members" or "distributors") and distributed Bimbo's bakery products at any time during the applicable limitations period.  Bimbo calls these Distributors "Independent Operators" or "IO's."  They bring this New York Rule 23 Class against Defendant pursuant to Rule 23 of the Federal Rules of Procedure, to remedy violations of New York state law, including but not limited to New York Labor Laws § 190, *et. seq.* and the supporting New York State Department of Labor Regulations, N.Y. Comp. Codes R. & Regs. Tit. 12, § 137-1.1, *et. seq.*  Upon information and belief, the size of the Rule 23 Class is at least 50 individuals. Although the precise number of such employees is unknown, the facts on which the calculation of that number depends are presently within the sole control of Defendants.

3.      Defendant has willfully engaged in a pattern, policy and practice of unlawful conduct for the actions alleged in this Complaint, in violation of the federal and state rights of the Plaintiffs, similarly situated individuals, and members of the proposed New York Rule 23 Class by misclassifying them as independent contractors when Plaintiffs were, in fact, employees.

**PARTIES**

4.      Plaintiff, Nicholas Franze, is a resident of Dutchess County, New York and a current Distributor since on or about June 7, 2010.  During that time frame, Franze delivered and picked up baked goods and performed merchandising duties of retail bakery products on behalf of Defendants in New York.  During the relevant time, Plaintiff regularly worked more than 40 hours per week and did not receive overtime pay at any time, or any other employment benefits, and was left unprotected against unlawful wage deductions.  Franze has filed a written consent to join this action.

2

5.      Plaintiff, George Schrufer, Jr., is a resident of Pike County, Pennsylvania and has worked for Bimbo and its predecessor companies from on or about April 1, 1996 through the present.  During the relevant time frame, Schrufer delivered and picked up baked goods and performed merchandising duties of retail bakery products on behalf of Defendants in New York. During the relevant time, Plaintiff regularly worked more than 40 hours per week and did not receive overtime pay at any time or any other employment benefits and was left unprotected against unlawful wage deductions.  Schrufer, Jr. has filed a written consent to join this action.

6.      Defendant Bimbo is a corporation organized and existing under the laws of the state of Delaware.  The company is duly authorized to do business in the state of Pennsylvania and its principal place of business is 255 Business Center Drive, Horsham, Pennsylvania. Bimbo Foods Bakeries Distribution, Inc. was previously known as George Weston Bakeries Distribution Inc. ("GWBD").  Effective January 1, 2010, GWBD changed its name to Bimbo Foods Bakeries Distribution, Inc.

7.      Upon information and belief, Defendant's annual gross volume of sales made or business done is not less than $500,000.

## JURISDICTION AND VENUE

8.      Subject matter jurisdiction over Plaintiffs' FLSA claims is based upon 29 U.S.C. § 216 (b) and 28 U.S.C. § 1331 and 1337 and pursuant to 42 U.S.C. 2000e-5(f) and (3).   As this action arises under Acts of Congress regulating commerce, jurisdiction over Plaintiffs' claims for declaratory relief is conferred by 28 U.S.C. §§ 2201 and 2202.

9.      Venue is proper in this court pursuant to 28 U.S.C. § 1391 because Plaintiffs reside in this District, Defendants does business in this District and a substantial part of the events or omissions giving rise to the claim occurred here.

10.     This court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## STATEMENT OF FACTS

11.     Plaintiffs Franze and Schrufer, Jr., and others similarly situated, and members of the FLSA and  New York Rule 23 Class have been improperly classified by Defendant as independent contractors.   As part of their regular business practice, Defendants have willfully, intentionally and repeatedly engaged in a pattern, practice and/or policy of violating the FLSA with respect to Plaintiffs and the FLSA collective as well as the NYLL.

12.     Defendant Bimbo is in the business of wholesale distribution of fresh bakery products to retail and food outlets, restaurants and institutions.

13.     Bimbo contracts with individuals (such as Plaintiffs) to sell and distribute bakery products in New York. Under the contracts, Plaintiffs obtain the right to distribute authorized products in a defined territory.

14.     Defendant's authorized products include Thomas, Sara Lee, Nature's Harvest, Arnold, Brownberry, Oroweat, Ball Park and Entenmann's.

15.     Defendant by and through its subsidiaries, ships bakery goods and snack products and marketing material to its warehouses where the product is then broken up by geographical territory.  Distributors go to a warehouse each morning, load their vehicles and deliver the products to Defendant's customers at times and places specified by Defendant.

16.     Defendant and their affiliates use employees such as Plaintiffs and other similarly situated individuals within New York to pick up product at designated warehouses located in areas such as Goshen, New York, deliver baked goods and stock the shelves at certain stores.

17.     As a condition of their employment, Plaintiffs and other Distributors signed a lengthy Distribution Agreement ("Distribution Agreement" or "Agreement") that falsely classifies these Distributors as independent contractors, rather than Defendant's employees.

18.     The Distribution Agreement is essentially a contract of adhesion, drafted and presented by Defendant, the terms of which are identical or virtually identical for all Plaintiffs. The terms of the Distribution Agreement are not negotiable.

19.     The Distribution Agreement purports to sell the "distribution rights" of a defined territory or sales area for the delivery of the bakery products.

20.     While the Distribution Agreement contains provisions that classify Plaintiffs as independent contractors with the "right to operate the business as [he] chooses, Defendant retains, among other things, (a) a general security interest in the distribution rights, (b) the right to approve or disapprove subsequent buyers of a Distributor's distribution rights (with a right of first refusal) upon the sale of those rights, (c) upon a Distributor's death, the right to require a sale of the distribution rights on behalf of the estate, (d) standards for delivery of product and service of customers, (e) the right to restrict Distributors from selling competitive products, (e) the right to terminate the Distribution Agreement whenever it determines that Distributor has breached the Agreement and is no longer able to cure the reason for the breach, (f) the right to service a sales area Defendant unilaterally deems abandoned (and retaining all proceeds derived therefrom), (g) the right to service a sales area and charge a fee to do so, (h) that upon a sale of distribution rights, Defendant receives a fee totaling 2% of the sale price, (i) a limited power of attorney that gives Defendant full and complete authority to transfer the distribution rights or perform any of the Distributor's obligations pursuant to the Distribution Agreement, (j) the right to change or override the amount of product ordered, set prices for the products and the right to

5

act as a Distributor's agent.  These are but some of the controls Defendant exercises over

Distributors.

21.     Defendant also illegally deducts from Plaintiff's wages all of the costs associated

with the delivery of the bakery products including but not limited to, loan payment for the

financing of the purchase of the distribution rights and with regard to the truck the Distributor

leases through Defendant and its agents, lease payments for computer equipment, insurance,

supplies and administrative costs, the cost of returned "out of code" product, the cost of servicing

a sales area at its own direction and penalties or fees assessed by customers against Plaintiffs

without their consent.

22.     Defendant employs other individuals who perform the same work as Distributors

but are not classified as independent contractors but instead are delivery drivers.  Those

employees do not have to purchase distribution rights and have none of the financial burden

Distributors are forced to assume.  However, Distributors, including Plaintiffs, are not given the

option of being employees.

23.     Like the employee drivers who were not required to purchase distribution rights

("distribution rights" or "territories" or "routes"), the Distributors delivered baked products to

retailers and other customers, thereby providing an integral service to Defendant's baked goods

business.  On a typical week, Distributors such as the named Plaintiffs work(ed) more than 40

hours per week delivering the baked goods for Defendant and performing other merchandising

delivery duties.

24.     Distributors are required to work seven days per week. Five of those days are

when Distributors deliver product to the stores in their territory.  On the other two days ("pack

out days"), Distributors have to service a percentage of their stores by pulling product previously

left in the storerooms and re-packing the store shelves and arranging product to move fresher product to the back of the shelves and older product to the front.  On the pack out days, Distributors do not use their delivery trucks but utilize their personal vehicles.

25.     Distributors do not receive overtime pay or any other benefits conferred upon employees such as health and retirement benefits and expense and mileage reimbursement.

26.     Defendant treated Distributors as independent contractors even though they have substantially similar job duties and are, or were, subject to Defendants' common practices, policies and/or plans that control(led) their job functions just as individuals who are classified as employees are controlled.

27.     Defendants derived this plan to make employees independent contractors as a willful scheme to deprive Distributors of their employee benefits because they knew that by creating a pretext, the Distributors and all similarly situated individuals performed work that required overtime pay and that the Distributors would not receive such pay or the benefits that employees received.

28.     By misclassifying the Distributors as independent contractors, Defendants save money by not having to pay payroll taxes or any other benefits, including retirement benefits, to which employees are entitled.

29. .   Defendants maintain compensation and benefit plans and programs available to individuals Defendant classifies as employees.  Upon information and belief, the benefits include, health insurance, life insurance, short and long term disability programs, holiday and vacation pay and retirement plans such as a 401(k).

30.     Distributors were required to purchase their routes from Defendant as well and lease the vehicles they use(d) to deliver the goods although each Distributor was allowed to

purchase a vehicle on their own if they were financially able to do so. Those who could not afford to purchase their own vehicle financed one through Defendant.

31.     Defendant require(d) the Distributors to form corporations and then sign a contract called a Distribution Agreement. The material terms and conditions of each Distribution Agreement are essentially the same. Thus, each Distributor incurred costs by having to form legal entities simply to enter into the contract.

32.     Defendant exercised complete control over Distributors in the same manner they do when with employees. Specifically Defendants:

    a.    Dictated the terms and conditions of the Distribution Agreements and Distributors had no negotiating power with respect thereto.

    b.    Determined the Distributor's territory where they could sell;

    c.    Determined which products Distributors could sell;

    d.    Employ managers who have supervisory and disciplinary authority over the Distributors and ensure their compliance with Defendant's policies and procedures, which are many;

    e.    Require the Distributors to comply with its policies and procedures, including the time, place, and manner of pick-ups and deliveries. These policies and procedures are unilaterally established by Defendant and include, among other things, the ordering and pricing of products, the frequency of deliveries and removal of stale product and the manner in which delivery Distributors must conduct themselves;

    f.    Negotiate all the terms of the vendor-vendee relationship that require Distributors to display product according to those negotiations, and perform spot-checks to ensure Distributors' compliance with these policies;

    g.    Prevent Distributors from choosing when and how frequently they work. Instead, Defendant instructs Distributors as to which stores they must service and how many deliveries they must make per day and per week and by what time deliveries must be made;

    h.      Require Distributors to return to the warehouse each day after completing their deliveries so that they may "upload" data to Defendants' system, and sort stale bread for Defendant, which Defendant then resells;

    i.       Require Distributors to obtain its express, prior approval before selling their routes or substituting another driver for their route;

    j.      Prohibit the Distributors from exercising independent business judgment regarding the services they perform and the locations at which they perform these services. For example, Distributors are prohibited from discontinuing deliveries to certain stores, even if the deliveries are no longer profitable and product choices may be added or subtracted without their approval or consent;

    k.     Prohibit Distributors from participating in activities considered competitive to Defendants.

33.     Distributors and Defendant established a continuing relationship by virtue ot their Agreement which further supports the existence of an employer-employee relationship. The Distribution Agreement does not terminate until such time the Agreement is unilaterally terminated by Defendant and/or a sale of the distribution rights is initiated by Plaintiffs.

34.     Distributors perform(ed) their services on a full-time basis which impliedly restricts them from performing other work. The work each Distributor performs does not require any specialized skills.

35.     Distributors are required to fill out daily forms and generate multiple reports regarding their services which demonstrate Defendant exercises control over Distributors. In addition to their other duties, Plaintiffs have to complete daily tasks each evening such as placing and adjusting orders and returning extra product.

36.     At no time did Plaintiffs receive meal breaks or other rest periods. Distributors work full-time for Defendant and have no opportunity to obtain other meaningful employment.

37.     Defendant customarily negotiates the terms of its relationships regarding products Distributors distribute with its stores simultaneously with its negotiations for products its

employees distribute.  This control by Defendant results in a negative financial impact on

Distributors' ability to earn money since Distributors cannot participate in, or reject any

negotiations and Defendants often provide discounts on Distributors' products in order to get

more favorable pricing on other products it sells.  Distributors are also subjected to loss of profits

through various promotions that are forced upon them.

      38.    Defendant willfully misrepresented to Plaintiffs and other Distributors that they

would run their businesses independently, would have the discretion to exercise their own

business judgment and would have broad scope to make each individual enterprise profitable.

Specifically, Plaintiffs and other Distributors had no right or ability to run their business

independently and Defendants maintained rights including the rights to:

      (i)     Negotiate the wholesale or retail price for the purchase and sale of products and restrict what products Distributors could sell;

      (ii)     Negotiate shelf space for products in their individual territories;

      (iii)     Modify orders placed by Distributors and have them pay for product they did not order whether they agree or not;

      (iv)     Repurchase a percentage of stale products at a price set solely at Defendants' discretion;

      (v)     Assign delivery stops to each Distributior in a particular order and require Distributors to seek approval if they wanted to change that order;

      (vi)     Discipline Distributors for, in Defendant's sole discretion, up to and including termination, for reasons that Defendant decides are breaches of the Distributor Agreements that could include issues with servicing customers, hiring employees to run their routes, taking unauthorized time off work or for altering their routes;

      (vii)     Withhold pay and deduct money from Distributors wages;

      (viii)     Unilaterally alter Distributors' standards, guidelines and operating procedures; and

10

(ix)    Unilaterally terminate Distributor's routes without warning based upon the number of breach letters issued and/or the number of alleged breaches that have occurred.

These are in addition to other rights and controls Defendant reserved and exercised.

39.    Defendants routinely modified Distributors' product orders to increase the amount of their orders. Distributors cannot refuse the additional product and if they do, they are billed for the product through deductions in their wages.

40.    Defendants also require the Distributors to process each and every transaction through a portable computer it provides to them. This hand held device controls the product prices, maintains customer information and tracks Distributors' mileage.

41.    Other than being forced to pay a purchase price for their routes, Distributors only other personal investment is if they need to purchase a vehicle to deliver and pick up products. Defendant's supply all other equipment, facilities and office support.

42.    Distributors were necessitated to work seven days per week and work more than 40 hours per week and no Distributor was paid any overtime or provided any of the benefits accorded to other employees.

43.    Distributors were not compensated for time spent working before and after shifts where they were required to load and unload products at Defendants' warehouses.

44.    Distributors also had virtually no ability to increase sales volumes as they mostly service large stores with set planograms that designate the available space for such product.

## COLLECTIVE ACTION ALLEGATIONS

45.    Plaintiffs bring Count I of this Complaint as a collective action, alleging violations of the FLSA on behalf of themselves and all similarly situated individuals. This "Federal Collective Group" is defined as:

> all individuals who, through a contract with Defendant or otherwise,
> performed or perform as Distributors for Defendants under an
> agreement with Defendant or any of its subsidiaries and
> who were classified by Defendant as "independent   contractors"
> (collectively "Covered Positions") anywhere in the United States
> and any time from the date that is three years preceding the
> commencement  of this action through the close of the Court-
> determined opt-in period and who file a consent to join this action
> pursuant to 29 U.S.C. § 216(b).

The "Federal Collective Group" also includes the named Plaintiffs in this action.  Plaintiffs

reserve the right to modify this definition prior to conditional certification of the collective

group.

46.     Plaintiffs, along with current and former employees of Defendant, in Covered

Positions are similarly situated in that they have substantially similar job requirements, pay

provisions, and are subject to Defendant's common practice, policy, or plan of controlling their

daily job functions.

47.     Defendant knowingly permit(ted) and require(d) Plaintiffs and members of the

Federal Collective Group to work more than 40 hours per week without overtime compensation.

48.     Upon information and belief, Defendant knew that Plaintiffs and all similarly

situated individuals performed work that required overtime pay.

49.     Defendant has therefore operated under a scheme to deprive these employees of

overtime compensation by failing to properly compensate them for all time worked.  They

accomplished this by convincing Distributors they were independent contractors and thus, not

eligible for overtime compensation.

50.     Defendant's conduct, as set forth in this Complaint, was willful and has caused

significant damages to Plaintiff and all similarly situated individuals.

51.     Count I of this Complaint for violations of the FLSA may be brought and maintained as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) because the claims of the Plaintiffs are similar to the claims of current and former "independent contractors" who worked for Defendants.

52.     Defendant is liable under the FLSA for failing to properly compensate Plaintiffs and all similarly situated individuals, and notice of this lawsuit should be sent to them.  Those similarly situated employees are known to Defendant and are readily identifiable through Defendant's payroll records.

## CLASS ACTION ALLEGATIONS

53.     Plaintiffs bring the Second, Third and Fourth Cause of Action, NYLL claims, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and all Distributors of Defendant, on or after the date that is six years before the filing of the Class Action Complaint in this case (the "Rule 23 Class").

54.     The members of the Rule 23 Class are so numerous that joinder of all members is impracticable.

55.     Upon information and belief, the size of the Rule 23 Class is at least 50 individuals.  Although the precise number of such employees is unknown, the facts on which the calculate of that number depends are presently within the sole control of Defendant.

56.     Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting them individually and include, but are not limited to, the following:

      a.     whether Defendant violated NYLL, Articles 6 and 19, and the supporting New York State Department of Labor regulations;

b.  whether Defendant failed to compensate Plaintiffs and the Rule 23 Class for hours worked in excess of 40 hours per work week;

c.  whether Defendant failed to keep true and accurate time and pay records for all hours worked by Plaintiffs and the Rule 23 Class, and other records required by the NYLL;

d.  whether it was Defendant's policy or practice to fail to furnish Plaintiffs and the Rule 23 Class with an accurate statement of wages, hours worked, rates paid, and gross wages as required by the NYLL;

e.  whether Defendant's policy of failing to pay workers was instituted willfully or with reckless disregard of the law; and

f.  the nature and extent of class-wide injury and the measure of damages for those injuries.

57.    Plaintiffs' claims are typical of the claims of the Rule 23 Class they seek to represent.  Plaintiffs and all members of the Rule 23 Class work, or have worked, for Defendant and are subject to the same policies and practices.  Plaintiffs and members of the Rule 23 Class enjoy the same statutory rights under the NYLL to be paid overtime wages.  Plaintiffs and members of the Rule 23 Class have all sustained similar types of damages as a result of Defendant's failures to comply with the NYLL.  Plaintiffs and the members of the Rule 23 Class have all been injured in that they have been uncompensated or under-compensated due to Defendant's common policies, practices, and patterns of conduct.

58.    Plaintiffs will fairly and adequately represent and protect the interest of the members of the Rule 23 Class.  Plaintiffs understand that as class representatives, they assume a fiduciary responsibility to the class to represent its interests fairly and adequately.  Plaintiffs recognize that as class representatives, they must represent and consider the interests of the class just as they would represent and consider their own interests.  Plaintiffs understand that in decisions regarding the conduct of the litigation and its possible settlement, they must no favor their own interest over the interest of the class.  Plaintiffs recognize that any resolution of a class

action must be in the best interest of the class.  Plaintiffs understand that in order to provide

adequate representation, they must be informed of developments in litigation, cooperate with

class counsel, and testify at deposition and/or trial.  Plaintiffs have retained counsel competent

and experienced in complex class actions and employment litigation.  There is no conflict

between the Plaintiffs and the Rule 23 Class members.

59.     A class action is superior to other available methods for the fair and efficient

adjudication of this litigation. The members of the Rule 23 Class have been damaged and are

entitled to recovery as a result of Defendant's violation of the NYLL as well as their common

and uniform policies, practices, and procedures.  Although the relative damages suffered by

individual members of the Rule 23 Class are not *de minimis*, such damages are small compared

to the expense and burden of individual prosecution of this litigation.  The individual Plaintiffs

lack the financial resources to conduct a thorough examination of Defendant's timekeeping and

compensation practices and to prosecute vigorously a lawsuit against Defendant to recover such

damages.  In addition, class litigation is superior because it will obviate the need for unduly

duplicative litigation that might result in inconsistent judgments and Defendants' practices.

60.     This action is properly maintainable as a class action under Federal Rule of Civil

Procedure 23(b)(3).

### FIRST CAUSE OF ACTION

**Failure to Pay Overtime to
the Federal Collection Group
(FLSA, 29 U.S.C. § § 201 *et seq.*)
(On behalf of the named Plaintiffs and the Federal Collective Group)**

61.     Plaintiffs re-allege and incorporate by reference each and every allegation set

forth in the preceding Paragraphs as if set forth in full herein.

62.     Section 206(a)(1) of the FLSA provides in pertinent part:

> Except as otherwise provided in this section,
> no employer shall employ any of his employees
> who in any work week is engaged in commerce
> or in the production of goods for commerce, for
> a work week longer than forty hours unless such
> employee receives compensation for his employment
> in excess of the hours above specified at a rate not
> less than one and one-half times the regular rate at
> which he is employed.

29 U.S.C. 207 § (a)(1).

63.　There are no exemptions applicable to Plaintiffs or to other members of the Federal Collective Group.

64.　For purposes of the FLSA, the employment practices of Defendants were and are uniform in all respects material to the claims asserted in this Complaint throughout the portions of United States in which Defendants conduct business.

65.　Plaintiffs and the other members of the Federal Collective Group, either regularly or from time to time, worked more than 40 hours per week, but did not receive overtime pay.

66.　At all relevant times, Defendant has had gross operating revenues in excess of $500,000 annually.

67.　In committing the wrongful acts alleged to be in violation of the FLSA, Defendant acted willfully in that they knowingly, deliberately, and intentionally failed to pay overtime premium wages to Plaintiffs and other members of the Federal Collective Group.

68.　As a result of Defendant's failure to pay overtime premium wages, Plaintiffs and the other members of the Federal Collective Group were damaged in an amount to be proved at trial.

69.　Defendant willfully and intentionally misclassified Plaintiffs and others similarly situated as independent contractors rather than employees in order for Defendant to avoid tax

obligations and to avoid paying minimum wages and overtime wages for workweeks in excess of 40 hours, avoid payment of benefits and other compensation to which Plaintiffs and others similarly situated would have been entitled as regular employees.

70.     Pursuant to 29 C.F.R. part 516, Defendant was required to maintain adequate and accurate records regarding Plaintiffs and others similarly situated.

71.     Defendant did not maintain adequate or accurate records of the time and day of week when Plaintiffs' workweeks began, their hours worked each day, the total hours worked each workweek, regularly hourly pay rate, total daily or weekend straight-time earnings, total overtime earnings for the workweek, and additions to or deductions from their wages, among others.

72.     Therefore, Plaintiffs demand that they and the other members of the Federal Collective Group be paid overtime compensation as required by the FLSA for every hour of overtime worked in any work week for which they were not compensated, plus interest, damages, penalties, and attorneys' fees as provided by law.

## SECOND CAUSE OF ACTION

### New York State Labor Law
### Violation For Unpaid Overtime
### (Brought on behalf of Plaintiffs and the members of the Rule 23 Class).

73.     Plaintiffs reiterate and reallege each and every allegation contained in the previous paragraphs as if set forth in full herein.

74.     At all times relevant, Plaintiffs and members of the Rule 23 Class have been employees and Defendant has been their employer within the meaning of the NYLL.

75.     Plaintiffs and the Rule 23 Class members are covered by the NYLL.

76.     Defendant failed to pay overtime wages to Plaintiffs as required by New York Labor Law Articles 6 and 9 and their implementing regulations, 12 NYCRR § 138-2.1., *et seq.*

77.     Defendant failed to keep, make, preserve, maintain and furnish accurate records of time worked by Plaintiffs and members of the Rule 23 Class.

78.     Defendant's failure to pay overtime was willful and intentional.

79.     Defendant's failure to comply with New York State Law caused Plaintiffs to suffer loss of wages and interest thereon.

80.     Due to Defendant's violations of the NYLL, Plaintiffs and members of the Rule 23 Class are entitled to recover from Defendant unpaid overtime, reasonable attorneys' fees and costs of the action, liquidated damages as provided for by the NYLL Article 6 § 198 and pre-judgment and post-judgment interest.

## THIRD CAUSE OF ACTION

**New York Labor Law – Record Keeping Violations**
**(Brought on behalf of Plaintiffs and the members of the Rule 23 Class)**

81.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

82.     Defendant has willfully failed to supply Plaintiffs and the members of the Rule 23 Class notice as required by NYLL Article 6, § 195, in English or in the language identified by Plaintiffs and the members of the Rule 23 Class as their primary language, containing Plaintiffs' and the members of the Rule 23 Class' rate of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances, the regular pay day designated by the employer in accordance with NYLL Article 6, § 191; the name of the employer; any "doing business as" names used by

the employer, the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

83.     Defendant has willfully failed to supply Plaintiffs and the members of the Rule 23 Class with an accurate statement of wages as required by NYLL Article 6, § 195, containing the dates of work covered by that payment of wages; names of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

84.     Due to Defendant's violations of the NYLL, Plaintiffs and the members of the Rule 23 Class are entitled to recover from Defendant one hundred dollars for each workweek that the violations occurred or continue to occur, or a total of twenty-five hundred dollars, as provided by NYLL Article 6 § 198(1)-d, fifty dollars for each workweek that the violations occurred or continue to occur, or a total of twenty-five hundred dollars, as provided for ty NYLL Article 6, § 198(1)-b, reasonable attorneys' fees, costs, injunctive and declaratory relief.

**FOURTH CAUSE OF ACTION**

**New York Labor Law – Unlawful Deductions**
**(Brought on behalf of Plaintiffs and the members of the Rule 23 Class)**

85.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

86.     Defendant engaged in a widespread pattern, policy, and practice of violating the NYLL, as detailed in this Class Action Complaint.

87.     Defendant's violations of the NYLL, as described in this Class Action Complaint, have been willful and intentional.

88.     At all relevant times, Plaintiffs and the member of the Rule 23 Class have been employees and Defendant has been an employer within the meaning of the NYLL.

89.     The provisions of NYLL § 193 apply to Defendant and protect Plaintiffs and the members of the Rule 23 Class.

90.     Defendant has willfully reduced the wages of Plaintiffs and members of the Rule 23 Class by making unlawful deductions from their wages.

91.     In addition, Defendant has forced Plaintiffs to incur expenses for Defendant's benefit without reimbursement.  The required and unreimbursed expenses incurred by Plaintiffs and the members of the Rule 23 Class for the benefit of Defendant were unlawful deductions from the wages of Plaintiffs and the New York Class Members, in violation of NYLL § 193.

92.     Due to these violations, Plaintiffs and the members of the New York Class are entitled to recover from Defendant's deductions from their wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all other similarly situated persons, seek the following relief:

A.  That, at the earliest possible time, Plaintiffs be allowed to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have at any time during the three years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice, been employed by Defendant as drivers.  Such notice shall inform them that this civil action has been filed, of the

nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

B. Unpaid overtime pay, and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor regulations;

C. Unpaid overtime pay and liquidated damages pursuant to NYLL;

D. One hundred dollars for each work week that the violations of NYLL Article 6 § 195 occurred or continue to occur, or a total of twenty-five hundred dollars, as provided for by NYLL Article 6 § 198(12)-d;

E. Fifty dollars for each work week that the violations of NYLL Article 6 § 195 occurred or continue to occur, or a total of twenty-five hundred dollars, as provided for by NYLL Article 6 § 198(1)-b;

F. Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

G. Designation of Plaintiffs as representatives of the Rule 23 Class, and counsel of record as Class Counsel;

H. Issuance of a declaratory judgment that the practices complained of in this Class Action Complaint are unlawful under the NYLL:

I. Pre-judgment interest and post-judgment interest as provided by law;

J. Appropriate equitable and injunctive relief to remedy violations, including but not limited to an order enjoining Defendant from continuing their unlawful practices;

K. Attorneys' fees and costs of the action;

L. Such other injunctive and equitable relief as this Court shall deem just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues of facts and damages contained herein.

Dated: May 11, 2017
       Chestnut Ridge, New York

                    Yours, etc.

                    KANTROWITZ, GOLDHAMER
                    & GRAIFMAN, P.C.
                    Attorneys for Plaintiff

                    By:   *s/Randy J. Perlmutter*
                        Randy J. Perlmutter
                        747 Chestnut Ridge Road - Suite 200
                        Chestnut Ridge, NY 10977
                        Tel: (845) 356-2570
                        Fax: (845) 356-4335
                        rperlmutter@kgglaw.com