

19-2275
Franze v. Bimbo Bakeries USA, Inc.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: **10/08/2020**

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of September, two thousand twenty.

PRESENT: ROBERT D. SACK,
　　　　　　　RICHARD C. WESLEY,
　　　　　　　RICHARD J. SULLIVAN,
　　　　　　　　　*Circuit Judges*.

_____

Nicholas Franze, on behalf of themselves, and of all similarly situated individuals;
George Schrufer, Jr., on behalf of themselves, and of all similarly situated individuals,

　　　　　　　　　　*Plaintiffs-Counter-Defendants-Appellants*,

　　　v.　　　　　　　　　　　　　　　　　No. 19-2275-cv

Bimbo Bakeries USA, Inc.;
Bimbo Foods Bakeries Distribution, LLC,
FKA Bimbo Foods Bakeries Distribution, Inc.,
FKA George Weston Bakeries Distribution, Inc.,

MANDATE ISSUED ON 10/08/2020

*Defendants-Counter-Claimants-Appellees*.[*]

_____

FOR PLAINTIFFS-COUNTER-
DEFENDANTS-APPELLANTS:

RANDY J. PERLMUTTER, Kantrowitz,
Goldhamer & Graifman P.C.,
Chestnut Ridge, NY (Orin Kurtz,
Gardy & Notis, LLP, New York, NY,
Sam B. Smith, Kantrowitz,
Goldhamer & Graifman P.C.,
Chestnut Ridge, NY, *on the brief*).

FOR DEFENDANTS-COUNTER-
CLAIMANTS-APPELLEES:

DAVID B. SALMONS, Morgan, Lewis &
Bockius, Washington, DC (Michael J.
Puma, Morgan, Lewis & Bockius,
Philadelphia, PA, *on the brief*).

Appeal from a judgment of the United States District Court for the Southern

District of New York (Nelson S. Román, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED,**

**ADJUDGED, AND DECREED** that the judgment of the district court is

**AFFIRMED**.

Plaintiffs-Counter-Defendants-Appellants Nicholas Franze and George

Schrufer, Jr., on behalf of a class of similarly situated individuals ("Appellants"),

_____

[*] The Clerk of Court is directed to amend the caption as set forth above.

appeal from a July 10, 2019 opinion and order of the United States District Court for the Southern District of New York (Román, *J.*) granting summary judgment in favor of Defendants-Counter-Claimants-Appellees Bimbo Bakeries USA, Inc. ("BBUSA") and Bimbo Foods Bakeries Distribution, LLC ("BFBD") (collectively, "Bimbo") on Appellants' Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") claims. In essence, Appellants – who were (and may still be) delivery drivers of baked goods for Bimbo – contend that the district court erred in concluding that they were independent contractors and not Bimbo employees. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## I.    Appellants' FLSA Claims Against BFBD

The FLSA defines "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). "In light of the definition's circularity, courts have endeavored to distinguish between employees and independent contractors based on factors crafted to shed light on the underlying economic reality of the relationship." *Saleem v. Corp. Transp. Grp., Ltd.*, 854 F.3d 131, 139 (2d Cir. 2017). Accordingly, in *Brock v. Superior Care, Inc.*, we enumerated five factors that bear on whether workers are employees or independent contractors: "(1) the degree of

3

control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business."  840 F.2d 1054, 1058–59 (2d Cir. 1988).  The "ultimate concern" behind these factors "is whether, as a matter of economic reality, the workers depend upon someone else's business for the opportunity to render service or are in business for themselves."  *Id.* at 1059.

In analyzing the first *Superior Care* factor, the district court concluded that Bimbo "did not control [Appellants] directly and closely enough to render their relationship an employer-employee relationship."  2019 WL 2866168, at *8.  We agree, and several key facts support the district court's conclusion.  First, Appellants controlled the overall scope of their delivery operations.  They could purchase additional territories, sell their territories to other Independent Operators ("IOs"), or even enter into arrangements whereby one IO keeps the proceeds from selling to a customer in an area, but another IO retains the distribution rights to that area.  Schrufer took advantage of all of these options, modifying his territory and sales proceeds several times while he was an IO.

4

Second, Appellants were not required to deliver Bimbo products personally, and they could hire employees to substitute for them as needed. Both Franze and Schrufer hired assistants without any oversight from Bimbo, and in some cases, IOs hired others to run their businesses entirely. As we explained in *Saleem*, the ability to hire others to run the business is evidence of the type of "considerable independence and discretion" that supports a finding of independent contractor status. 854 F.3d at 143. Third, BFBD imposed no minimum-hour requirements on Appellants, who were free to set their weekly schedules, subject only to designated pickup and delivery times based on BFBD's warehouse hours and customer requirements. In *Saleem*, we also singled out schedule flexibility as a factor weighing in favor of independent contractor status because setting one's own hours demonstrates a lack of control by the putative employer and initiative on behalf of the worker. *See id.* at 146–48.

In response to these facts indicating Bimbo's lack of control, Appellants argue that the non-compete provision in their distribution agreements prevented them from driving routes and carrying products for competing companies. In *Saleem*, we specifically pointed to the fact that the black-car drivers in that case drove for other car services as a fact indicating the defendants' minimal control

5

over the plaintiffs.  *See* 854 F.3d at 141.  If there were fewer facts demonstrating Bimbo's lack of influence over Appellants' businesses, the non-compete clause – combined with the fact that Appellants solely carried Bimbo's products – might be of more consequence.  But Appellants' control over their distribution territories, ability to hire others, schedule flexibility, and lack of day-to-day oversight ultimately lead us to conclude that the economic reality was that Bimbo did not exercise significant control over Appellants' businesses.

In assessing the second *Superior Care* factor – which focuses on "the workers' opportunity for profit or loss and their investment in the business," *Superior Care*, 840 F.2d at 1058 – we consider whether workers have "control over essential determinants of profits in the business," *Saleem*, 854 F.3d at 145 (internal quotation marks and brackets omitted).  Moreover, a worker's "large capital expenditures – as opposed to negligible items, or labor itself – are highly relevant to determining whether an individual is an employee or an independent contractor."  *Id.* at 144 (internal quotation marks omitted).

Here, there is no question that Appellants made significant investments in, and had ample opportunity to profit from or lose money on, their businesses.  To purchase their delivery routes, Franze and Schrufer paid $148,000 and $98,034,

respectively, without any financial assistance from Bimbo. Investment costs of this sort "constitute a substantial financial outlay" that weighs in favor of independent contractor status. *Id*. at 144–45. Appellants bore significant risk when they made these up-front investments, and they had ample opportunity for profit or loss when they ultimately sold those distribution rights.

Appellants respond that they lacked control over their opportunities for profit or loss because of Bimbo's direct sales efforts to chain stores and institutional customers. But as the district court observed, even if Bimbo "had the bargaining power with larger customers," Appellants "could have grown their sales with smaller customers," with whom they could exercise greater freedom in negotiating prices. 2019 WL 2866168, at *7. And even with relatively fixed prices for larger clients, the overall value of Appellants' businesses primarily depended "on their own business judgment and foresight" in modifying their territories and managing day-to-day costs, "which suggests that they bore the risks of their decisions." *Id*. at *8. Taken together, Appellants' substantial investments in their businesses, coupled with their ability to solicit new (albeit smaller) customers and modify their territories to increase profits, weigh in favor of finding that they were independent contractors.

For many of the same reasons discussed in relation to Appellants' opportunities for profit or loss, the third *Superior Care* factor – "the degree of skill and independent initiative required to perform the work" – favors independent contractor status because Appellants' distribution businesses required substantial independent initiative and business management skills not provided by Bimbo. Appellants are correct that courts in this Circuit have generally found that the ability to drive vehicles and make deliveries is not the sort of "specialized skill" that favors a finding of independent contractor status. *See Saleem v. Corp. Transp. Grp., Ltd.*, 52 F. Supp. 3d 526, 541–42 (S.D.N.Y. 2014) (collecting cases). But as Appellants testified, operating their businesses required more than the ability to drive; their success depended on their ability to increase sales, build customer relationships, effectively identify the popularity of different products, hire and train employees, and manage profits and losses. So by modifying the scope of their businesses and "by deciding how best to obtain business from . . . clients, [Appellants'] profits increased through their initiative, judgment, or foresight – all attributes of the typical independent contractor." *Saleem*, 854 F.3d at 144 (internal quotation marks and alterations omitted).

The fourth *Superior Care* factor, "the permanence or duration of the working

8

relationship," also favors a finding that Appellants are independent contractors. Although Appellants point to the length of their relationships with Bimbo, like the black-car drivers in *Saleem*, this was "entirely of [Appellants'] choosing." *Saleem*, 854 F.3d at 147. As in *Saleem*, the economic reality of Appellants' freedom to buy and sell their distribution rights therefore weighs in favor of finding that they were independent contractors.

The final *Superior Care* factor addresses "the extent to which the [putative employees'] work is an integral part of the employer's business. *Superior Care*, 840 F.2d at 1059. Without citing to any evidence in the record, the district court found that Appellants were not integral to Bimbo's business because "Bimbo's primary business model was based on bakery product *manufacturing* and sales to end-market consumers." 2019 WL 2866168, at *10. But even if that were Bimbo's business model, we do not see how a model involving "sales to end-market consumers" could function without distributors that carry a company's product to those consumers. In addition, the district court made no attempt to distinguish between BFBD and BBUSA in making this determination.

Nevertheless, even assuming that Appellants were integral to BFBD's business, this conclusion does not affect the overall balance of the *Superior Care*

factors. BFBD's lack of control over Appellants, Appellants' substantial opportunity for profit and loss in their businesses, and the entrepreneurial skills required to keep those businesses afloat all support the district court's conclusion that Appellants were not BFBD's employees under the FLSA.

## II.    Appellants' NYLL Claims Against BFBD

After granting summary judgment in favor of Bimbo on Appellants' FLSA claims, the district court also granted summary judgment on Appellants' state-law NYLL claims. The record is silent regarding whether diversity jurisdiction would support Appellants' NYLL claims. But even if supplemental jurisdiction is the only basis for supporting Appellants' NYLL claims, the district court did not abuse its discretion in refusing to dismiss those claims after deciding Appellants' federal claims on the merits. *See Kroshnyi v. U.S. Pack Courier Servs., Inc.*, 771 F.3d 93, 102 (2d Cir. 2014) (holding that the district court did not abuse its discretion in exercising supplemental jurisdiction over state labor law claims after dismissing FLSA claims, where "discovery had been completed, dispositive motions had been submitted, and the case would soon be ready for trial").

In determining whether a worker is an employee or an independent contractor under the NYLL, courts consider the factors outlined in *Bynog v. Cipriani*

*Grp., Inc.*, namely:  "whether the worker (1) worked at his own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll and (5) was on a fixed schedule."  1 N.Y.3d 193, 198 (2003).  Although these factors are similar to those considered under the FLSA inquiry, the focus of the *Bynog* test is slightly different:  "the critical inquiry in determining whether an employment relationship exists [under the NYLL] pertains to the degree of control exercised by the purported employer over the results produced or the means used to achieve the results."  *Id.*

We have already discussed all factors relevant to the NYLL inquiry except whether Appellants received fringe benefits or were on Bimbo's payroll. Appellants concede that Bimbo "did not provide [Appellants] with benefits or put them on their payroll," but they argue that these factors should not weigh against them because it is precisely Bimbo's failure to pay benefits or characterize them as employees that is being challenged.  While this argument has some merit, Appellants *themselves* "claimed expenses and took deductions from their taxes for tens of thousands of dollars in business expenses for their distributorships."  2019 WL 2866168, at *3.  Under New York law, "the manner in which the relationship is treated for income tax purposes is certainly a significant consideration,"

11

although "it is generally not singularly dispositive." *Gagen v. Kipany Prods., Ltd.*, 812 N.Y.S.2d 689, 691 (3d Dep't 2006).  Thus, while Appellants can hardly be faulted for claiming tax benefits associated with independent contractor status, as that was how Bimbo labeled their relationship, the third and fourth *Bynog* factors do still weigh against them.

As IOs, Appellants set their own schedules (Factor 5) and worked at their own convenience (Factor 1).  And although Appellants did not generally work for any companies other than Bimbo or carry other companies' products, the distribution agreements made clear that they were free to engage in other employment (Factor 2).  Most importantly, Bimbo exercised a minimal "degree of control" over Appellants' day-to-day operations and the ultimate success of their distributorships.  *Bynog*, 1 N.Y.3d at 198.  All five *Bynog* factors therefore weigh in favor of concluding that Appellants were independent contractors, not BFBD's employees, under the NYLL.

## III.   Appellants' FLSA and NYLL Claims Against BBUSA

Although it is not entirely clear from its opinion, the district court also appears to have held that Appellants were not BBUSA's employees under the FLSA or NYLL.  The district court refers to BFBD and BBUSA, collectively, as

12

"Bimbo" throughout its opinion, and it held that "the economic reality of the relationship between [Appellants] and Bimbo is that [Appellants] were independent contractors" under the FLSA. 2019 WL 2866168, at *11. The district court nevertheless went on to hold that, because BBUSA was not a "joint employer with BFBD[,] . . . all claims against BBUSA [were dismissed] as a matter of law." *Id.*

The district court's opinion appears to confuse two issues related to employer status. As we explained in *Zheng v. Liberty Apparel Co.*, we apply "two different tests to determine whether an employment relationship exists" under the FLSA. 355 F.3d 61, 66 (2d Cir. 2003). One test examines whether an entity is an employee's "joint employer," and it applies when it is undisputed that the worker is already employed by one entity, but there is a question over whether that worker is also employed by the putative employer. *See id.* at 67 & n.2. The other test – the *Superior Care* test – has "been used primarily to distinguish independent contractors from employees" because it "help[s] courts determine if particular workers are independent of *all* employers." *Id.* at 67–68. This case involves only that second question – whether Appellants were independent of both BFBD and BBUSA – so whether BBUSA is a "joint employer" is ultimately irrelevant.

13

Nevertheless, Appellants do not point to any facts that meaningfully distinguish their relationship with BBUSA from their relationship with BFBD. Thus, for the same reasons that BFBD was not Appellants' employer under either the FLSA or the NYLL, BBUSA was also not their employer.

\*     \*     \*

We have considered the remainder of Appellants' arguments and find them to be without merit.  Accordingly, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit